Greco, J.
This is a G.L.c. 93A action to recover for the defendant’s alleged unfair and deceptive practices in selling a vehicle to the plaintiff which did not have a visible Vehicle Identification Number (‘VIN”). In finding for the plaintiff after trial, the court assessed $16,636.00 in single damages, doubled that award, and added $5,500.00 in attorney’s fees which resulted in a total recovery of $38,772.00 by the plaintiff. The defendant has appealed pursuant to Dist./Mun. Cts. R. A. D. A, Rule 8C.
Defendant C.L.A.S., Inc., doing business as Cityline Auto Sales, is a licensed car dealer engaged in the business of selling “total loss salvage motor vehicles.” This category includes vehicles which have been stolen or damaged and have been determined by the insurer to be “uneconomical to repair,” G.L.c. 90D, §l(para. 9), or stolen vehicles in good or even excellent condition which are recovered after the insurer has made full payment on the theft claim. In January, 1996, the plaintiff bought such a vehicle (a 1992 Toyota 4 Runner) from the defendant for $15,300.00. The vehicle had no visible VIN. While all of the documentation furnished to the plaintiff clearly indicated that the Toyota was a theft salvage vehicle, there was conflicting evidence at trial as to whether the vehicle’s lack of a visible VIN was disclosed to the plaintiff at the time of the sale.
The plaintiff replaced the muffler, tires and battery and, on February 5, 1996, took the Toyota to the Registry of Motor Vehicles for inspection and registration. The Registry rejected the vehicle because it had no visible VIN. The Registry inspector did not supply the plaintiff with a ‘Vehicle Identification Number Correction Form” as he was required to do by 540 CMR 4.04(b). Instead of dealing with the Toyota’s lack of a VIN (see note 2, infra), the Registry directed the plaintiff to take the Toyota to a State Police salvage vehicle inspection station, which the plaintiff did on February 8, 1996.[1] The vehicle was again rejected. The written *17 rejection notice issued to the plaintiff listed all of the documents the plaintiff had failed to provide, including a vehicle appraisal report, receipts for new parts and old parts (of which there were none) and the application fee, and also stated that both the “public VIN” and “theft tags” were missing from the vehicle. While the record suggests that the plaintiff already had the required appraisal and new parts receipts in his possession, he made several requests, purportedly at the direction of the State Police, to the defendant for additional documentation relative to the missing VIN, which the defendant claimed it did not have. The State Police inspector apparently failed to furnish a VIN correction form, and the plaintiff did not apply to the Registry for a substitute VIN for the vehicle.[2] Nor did he request reconsideration of the inspection rejection and a Registry hearing under G.L.c. 90D, §20D. Instead, either because he failed to understand what was required, or was misinformed by the State Police and Registry about the correct procedures to be followed, the plaintiff gave up all efforts to put the car on the road, garaged it and bought a different car.
1. The defendant’s initial argument on appeal is that the trial court erred in denying its fourth request for ruling that it was not liable under G.L.c. 93A, particularly in view of the court’s allowance of its second request that it had complied with G.L.c. 90D, §20C(d) by “fully and fairly” disclosing to the plaintiff that the Toyota was a salvage vehicle. To the extent that the defendant is claiming an inconsistency between these two rulings or between the allowance of request number 4 and the court’s ultimate finding for the plaintiff, such argument cannot be raised by the defendant on this appeal. The reason is that the defendant failed to file a motion to correct the alleged inconsistency or a motion for a new trial. See Cook v. Kozlowski, 351 Mass. 708 (1967); Fine Home Builders v. Humenn, 1998 Mass. App. Div. 90, 92 and cases cited.
In any event, there is no inconsistency. It is undisputed that the Toyota had no visible Vehicle Identification Number, and that the defendant knew that the VIN was missing when it sold the Toyota to the plaintiff. It would appear, therefore, that the trial courf s finding of a G.L.c. 93A violation was unrelated to any question of the defendant’s compliance with the requirements of G.L.c. 90D, §20C(d), and was instead based on the defendant’s clear violation of G.L.c. 266, §139 which makes it a crime to sell a vehicle “knowing or having reason to believe” that the VIN has been removed or obliterated.
2. The dispositive issue on this appeal is whether the evidence warranted a finding that the defendant’s violation of G.L.c. 266, §139 constituted an unfair and deceptive practice under G.L.c. 93A. The record clearly supports a finding that the defendant violated G.L.c. 266, §139 (b). That statute provides that
[wjhoever sells ... any motor vehicle ... knowing or having reason to *18 believe that [its] identifying number or numbers ... have been ... removed, ... destroyed, obliterated, or mutilated, unless authorized by law to do so, shall be punished by...
a fine, or imprisonment, or both. Although the defendant admitted at trial that it knew the Toyota lacked a public VIN, it offered no substantiation for its contention that it was somehow excepted from the provisions of §139 (b) and “authorized by law” to sell vehicles without visible VINs. The defendant’s used car dealer’s license, which permitted it to sell “total loss salvage motor vehicles,” was not a license to sell such vehicles with no VINs. The defendant’s allusion to some kind of industry “understanding” with the Registry was not supported by any statute, regulation, administrative ruling or other written directive constituting legal authorization to sell vehicles in violation of §139 (b).
However,
[j]ust as every lawful act is not thereby automatically free from scrutiny as to its unfairness under c. 93A..., so not every unlawful act is automatically an unfair (or deceptive) one under G.L.c. 93A. The circumstances of each case must be analyzed, and unfairness is to be measured not simply by determining whether particular conduct is lawful [or unlawful...] apart from G.L.c. 93A but also by analyzing the effect of the conduct on the public [or the consumer].’
Mechanics Nat’l Bank of Worcester v. Killeen, 377 Mass. 100, 109 (1979), quoting from Schubach v. Household Fin. Corp., 375 Mass. 133, 137-138 (1978). In this case, by violating G.L.c. 266, §139, the defendant exposed not only itself, but also the plaintiff, to criminal liability. Pursuant to §139(c), the plaintiff’s continued possession of the Toyota with knowledge that it had no VIN constituted a crime which could have resulted, upon the plaintiffs conviction, in a fine, imprisonment for up to two years and the revocation of his license. While the prospect of criminal prosecution may have been more theoretical than real, there was nothing theoretical about the predicament that the plaintiff found himself in when caught in the bureaucratic crossfire between the Registry of Motor Vehicles and the State Police — a predicament, moreover, which the trial judge would have been warranted in finding that the defendant could have anticipated. The trial judge might also have considered it inconsequential that the defendant at some point became sympathetic to the plaintiff’s plight and endeavored to give him some guidance. It should have been the plaintiffs decision whether he wanted to travel down this road in the first place. “A failure to disclose any fact, the disclosure of which may have influenced a person not to enter into a transaction, is a violation of c. 93A.” Grossman v. Waltham Chemical Co., 14 Mass. App. Ct. 932, 933 (1982). See also 940 CMR 3.16(2); Sargent v. Koulisas, 29 Mass. App. Ct. 956, 958 (1990); Homsi v. C.H. Babb Co., 10 Mass. App. Ct. 474, 479 (1980). In the circumstances of this case, the trial judge would have been justified in concluding that the plaintiff would not have bought the Toyota had he been fully apprized of its “illegal” condition and the potential problems in registering it. There was thus no error in the trial court’s finding that the defendant’s conduct constituted a “willful or knowing” violation of G.L.c. 93A. See G.L.c. 93A, §9(3).
3. The defendant also argues that the court erred in excluding evidence that during a pretrial conference and court ordered conciliation, the plaintiff agreed to apply for a vehicle identification number and the defendant agreed to assist him in this effort, but that the plaintiff never followed through on his promise. This evidence was offered not only to show that the plaintiff failed to mitigate his damages, but also to limit any G.L.c. 93A recovery to single damages. There was no error. Because these discussions took place just weeks before trial and well over *19 two years after the transaction in question, any damages to be mitigated at that point were minimal at best. Moreover, even if this evidence were to be considered a “tender of settlement” under G.L.c. 93A, §9(3), it was woefully too late to avoid the imposition of multiple damages. See Bonofiglio v. Commercial Union Ins. Co., 412 Mass. 612, 615 n.4 (1992); Williams v. Gulf Ins. Co., 39 Mass. App. Ct. 432, 437 (1995). The plaintiffs demand letter was dated March 2,1996. The defendant had thirty days to make a “written tender of settlement” which, if found to be “reasonable in relation to the injury actually suffered,” would have limited the amount of any recovery to “the relief tendered.” G.L.c. 93A, §9(3). The discussions referred to took place well into 1998.
Appeal dismissed.
So ordered.

 Pursuant to G.L.c. 90D, §20A(d), a total loss salvage vehicle which has been reconstructed or restored cannot be registered for operation unless the owner complies with the provisions of G.L.c. 90D, §20D. Section 20D(a) requires the owner to apply to the Registrar of Motor Vehicles for both a certificate of title and an inspection of the vehicle. The application for the title and inspection must be accompanied by four items: (1) the salvage title, (2) bills of sale for any major component parts, (3) an affidavit by the applicant attesting, inter alia, that the VIN numbers of the vehicle and component parts have not been removed, obliterated or altered and (4) the required inspection fee. The vehicle is then inspected at a location designated by the Registrar. The inspection necessarily includes, by statute and regulation, 540 CMR 12.01 et seq., a verification of the vehicle’s VIN.

 Section 32A of G.L.c. 90 states: “When the identifying number or numbers of a motor vehicle ... have been removed, defaced, altered, changed, destroyed, obliterated or mutilated, the registrar may issue to any person applying therefor a certificate authorizing the restoration upon such motor vehicle ... of its original identifying number or numbers, or the substitution therefor of an identifying number or numbers designated by the registrar.” Further, G.L.c. 90D, §29 provides: ‘The registrar shall prescribe and provide suitable forms of applications ... and all other notices and forms necessary to carry out the provisions of this chapter. The registrar may make necessary investigations to procure information to carry out the provisions of this chapter ... and assign or affix a new identifying number to a vehicle if it has none, or its identifying number is destroyed or obliterated ... and shall either issue a new certificate of title showing the new identifying number or make an appropriate indorsement on the original certificate.”