Curtin, J.
This is a Dist/Mun. Cts. RADA, Rule 8C, appeal by defendant Sullivan and Cogliano Companies, Inc. (“S & C”) following the entry of an $8,700.00 judgment in favor of plaintiff Ronald Edwards (“Edwards”) on his claims for breach of contract and equitable estoppel.[2]
Edwards was the sole witness to testify at the bench trial. The defendants rested at the close of the plaintiffs case, and made an oral motion for a “directed verdict,”[3] which tiie trial judge denied. Viewing the evidence in the light most favorable to the plaintiff, Haywood v. Massachusetts Automotive Group, Ltd., 1998 Mass. App. Div. 85, the facts are as follows:
In February of 1997, Edwards received a letter from Jay Cogliano (“Cogliano”), president of S & C, offering him a position as managing director of S & C’s new network integration division. Edwards was employed by Fidelity Investments at the time, but Edwards’ wife had known the Cogliano femify for more than twenty-six years. S & C’s initial employment offer was $1,538.47 per week in salary and a monthly car allowance of $350.00. When Edwards proved reluctant to leave Fidelity, Cogliano increased the offer to an annual base salary of $85,000.00, ten (10%) percent of the net profit margin of the new networking group as a commission, a $500.00 monthly car allowance and a promise that Edward would “be put on an incentive plan to obtain a company car... [A]t the point in time [Edwards] obtains a company car, the $500.00 car allowance will no longer apply.” These employment terms were set forth in written correspondence from Cogliano. Edwards accepted the offer and began working for S & C in April, 1997.
Cogliano was Edwards’ immediate supervisor and the two met daily In early June, 1997, Edwards told Cogliano that he was dissatisfied with the progress of the new division and “did not know if this situation was working” for him. The next day, Cogliano met with Edwards and led him to a new Mercedes Benz in the company parking lot Cogliano said that he had had the car brought over from the Herb Chambers dealership and that this was “the type of car that [Edwards] should think about having” and that Cogliano could see him driving. Edwards owned a 1991 Dodge Dynasty at the time which he used for work The Dodge was in good running order and Edwards was not in *44 (he market for a new car. Cogliano gave Edwards the keys to the Mercedes and (he two took it for a test drive. Upon (heir return, Cogliano told Edwards to take the car home to see if he liked it Edwards informed Cogliano the next day that he was interested in the Mercedes and Cogliano told him to go to the Herb Chambers dealership.
At the dealership, Edwards was met by a salesperson and the finance officer who presented Edwards with a number of forms[4] which had already been completed with the necessary information. They instructed Edwards to sign on the lines designated with “x’s.” Without reading the completed forms, Edwards signed them, thereby agreeing to lease the Mercedes for three years (thirty-six payments of $1,150.00). Edwards did not negotiate the price or terms of the lease, did not provide Herb Chambers with any personal or financial information, and did not discuss or even look at any other cars. He testified that he believed he was executing the documents on behalf, and at the request, of S & C to obtain a company car.
Cogliano gave Edwards the money for the lease down payment ($3,513.00) in the form of an S & C company check made payable to Herb Chambers. Cogliano also advised Edwards that it was his responsibility to insure the Mercedes. Edwards did so and registered the Mercedes in his name, but S & C paid the insurance bill for the first year. Monthly lease statements were sent to Edwards, who in turn presented them to Cogliano for payment by S & C. In fact, Edwards made no lease or other payment for the Mercedes. S & C ceased making the $500.00 monthly car allowance payments to Edwards once he obtained the Mercedes.
Approximately a week after leasing the Mercedes, Edwards became concerned about any personal liability on the lease of what he believed was a company car. He expressed his concern to Cogliano, reminding him that he could not personally afford the lease payments. Cogliano reassured Edwards that he shouldn’t worry and would be employed by S & C for a long time to come.
On August 7, 1997, Edwards was abruptly terminated from S & C. When Edwards asked Cogliano if the company would keep the Mercedes, he was informed that it would not and that the car was his. Unable to make the lease payments, Edwards borrowed $11,000.00 from family members and paid that sum to Herb Chambers to buy out the lease agreement The Mercedes was returned to the dealership. Cogliano gave Edwards $2,300.00 to cover the monthly lease payments for July and August which S & C had never sent When no additional money was forthcoming from S & C despite repeated requests, Edwards commenced this suit to recover the $8,700.00 balance on the lease buy out
The trial judge made detailed findings of fact and rulings of law,[5] and ordered *45 judgment against S & C in the amount of $8,700.00 in favor of Edwards on Counts I and II of his complaint for breach of contract and equitable estoppel.[6]
There was no error in the trial court’s determination that S & C was estopped to deny its liability for the lease of the company car provided to Edwards.
The doctrine of equitable estoppel is utilized “to accomplish the prevention of results contrary to good conscience and fair dealing...” McLearn v. Hill, 276 Mass. 519, 524 (1931), and “is not applied except when to refuse it would be inequitable.” Saugus v. Refuse Energy Systems Co., 388 Mass. 822, 830 (1983), quoting from Boston & Albany R.R. v. Reardon, 226 Mass. 286, 291 (1917). The burden was on Edwards to demonstrate the basis for an estoppel by proving the following elements:
(1) a representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made; (2) an act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made; (3) and detriment to such person as a consequence of the act or omission.
Boylston Develop. Group v. 22 Boylston St. Corp., 412 Mass. 531, 542 (1992). See also Clickner v. Lowell, 422 Mass. 539, 544 (1996). The issue is one of fact for a trial court Quality Finance Co. v. Hurley, 337 Mass. 150, 155-156 (1938); K.B. v. D.B., 37 Mass. App. Ct. 265, 266 (1994).
It is clear in the instant case that Cogliano’s conduct amounted to a representation by S & C that Edwards was being offered a “company car” for which S & C would be responsible and that such representation was intended to induce Edwards into leasing the Mercedes. That lease was not merely authorized by Cogliano, but initiated and orchestrated by him. Edwards was neither looking for a car at the time, nor in the financial position to afford a luxury vehicle. Cogliano had obtained other cars from Herb Chambers for S & C managers. Within only one day of Edwards’ expression of his dissatisfaction with his position at S & C, Cogliano had contacted Herb Chambers, selected the Mercedes make and model, arranged for the car to be delivered to S & C for Edwards’ inspection, and encouraged the surprised Edwards to take the car and show it to family and friends.[7] Given the completed forms that awaited Edwards’ signature at the dealership, additional inferences were warranted that Cogliano negotiated the price and terms of the lease, and provided or authorized the provision to Herb Chambers of Edwards’ personal and financial information necessary for the transaction. Finally, Cogliano provided Edwards with an S & C check for the down payment and indi *46 cated that the company would pay for the car’s insurance and lease payments.
S & C mistakenly suggests that these representations did not amount to wrongdoing, “bad acts,” misrepresentations or fraud and thus failed to support a finding of equitable estoppel. The doctrine of estoppel does not, however, require evidence of “deceit, bad faith or actual fraud. Facts felling short of these elements may constitute conduct contrary to general principles of fair dealing and to the good conscience which ought to actuate individuals and which it is the design of tiie courts to enforce.” MacKeen v. Kasinskas, 333 Mass. 695, 698 (1956).
As to the remaining elements, the evidence is undisputed that Edwards executed the Mercedes lease in reliance on S & C representations that in doing so, he was obtaining a company car at S & C’s behest and for which S & C would be liable. In view of the parties’ employment agreement which provided for a “company car” and Cogliano’s statements and conduct, a finding was warranted that such reliance was reasonable. See generally, Turnpike Motors, Inc. v. Newbury Group, Inc., 413 Mass. 119, 125 (1992). Finally, it was in consequence of such reasonable reliance that Edwards became personally obligated on a long term automobile lease to his substantial economic detriment.
Accordingly, the judgment for the plaintiff is affirmed.[8] The defendant’s appeal is dismissed.
So ordered.

 The trial court was vested with equitable jurisdiction by virtue of St. 1996, c. 358, s. 3. See Herman v. The Home Depot, 436 Mass. 210, 214-215 (2002).

 As has been frequently stated, a motion for a “directed verdict” in a District Court trial without a jury is a “procedural anomaly.” Espinola v. Riley’s Liquors, Inc., 1994 Mass. App. Div. 96. Such a motion should be captioned and is property treated as one for involuntary dismissal pursuant to Mass. R. Civ. P. 41(b) (2). Dew v. Laufaci, 2001 Mass. App. Div. 95, 97; Prophete v. Polynice, 2000 Mass. App. Div. 194, 195.

 These included a three-year lease agreement with Mercedes-Benz, a Motor Vehicle Purchase Agreement with Herb Chambers and an application for motor vehicle registration.

 The court found, inter alia, that “the defendant is liable to the plaintiff in the amount of $8,700.00. The plaintiffs contract stated that the plaintiff would receive a $500.00 monthly allowance until he obtained a company car. Indeed, the $500.00 allowance stopped after the plaintiff leased the Mercedes-Benz. The company then paid the car lease. The plaintiff signed the lease at the inducement of Jay Cogliano, acting on behalf of the corporation. Upon the termination of the plaintiff, the defendant corporation refused to take the car, thereby causing the plaintiff, who could no longer afford the car, to buy out the lease for $11,000.00. Although the plaintiff was reimbursed $2,300 for two months of the lease, he is out-of-pocket $8,700.00....
“Additionally, since the Statute of Frauds’ purpose is merely to require written evidence of obligations, part-performance of that contract can take an alleged contract out of the Statute of Frauds. Why would someone partially perform unless there was an agreement? Here, since Sullivan and Cogliano paid Herb Chambers for a number of months after plaintiff signed the lease, this is evidence that there was an understanding and an agreement that this was a company car and, therefore, defendant is estopped from trying to disclaim such an agreement now.”

 Judgment was also entered for S & C on Counts IE and IV of the complaint, and for Cogliano on all counts. S & C argues on appeal that the trial judge’s ultimate finding in favor of S & C on Count in for “detrimental reliance” and against S & C on Count H for equitable estoppel were inconsistent However, S & C waived the argument by failing to file in the trial court a motion to correct the alleged inconsistency or a motion for a new trial. Cook v. Kozlowskl, 351 Mass. 708 (1967); Ramirez v. C.L.A.S., Inc., 2000 Mass. App. Div. 16, 17. We note only that there is a distinction between a reliance or promissory estoppel claim and one for equitable estoppel “[Ejquitable estoppel permits recovery only where there has been reliance upon the misrepresentation of past or present facts whereas recovery may be had under the theory of promissory estoppel where reliance has been placed upon statements of future intent” Loranger Construction Corp. v. E. F. Hauserman Co., 6 Mass. App. Ct. 152, 155 (1978).

 The clear benefit derived by S & C in keeping Edwards with the company by arranging for a Mercedes Benz as his company car may have been a basis for the trial court’s rejection of S & C’s Statute of Frauds argument See Barboza v. Liberty Contractors Co., 18 Mass. App. Ct. 971, 971-972 (1984).

 In upholding the trial court’s judgment for Edwards on his equitable estoppel claim, it is unnecessary to consider the court’s finding as to S & C’s breach of contract