JERRY VITALE vs. LEONARD E. RUSSELL.

Essex.   January 5, 1955. — April 18, 1955.

Present: QUA, C.J., LUMMUS, WILKINS, SPALDING, & COUNIHAN, JJ.

*Contract,* What constitutes, For removal of gravel.

A finding that the owner of a parcel of land and a contractor made a contract for removal and sale of gravel from the land, which would require a permit from the municipal board of appeals, was not warranted by evidence that after the contractor had made the owner an offer for the gravel they arranged that the contractor should take the necessary steps for and defray the expenses incidental to obtaining a permit on the owner's application, that after a hearing and view by the board of appeals the board requested the owner to furnish a contour plan but he did not comply with the request and the permit was never granted, and that ultimately the owner informed the contractor that he had changed his mind about selling the gravel.

CONTRACT.   Writ in the Superior Court dated August 30, 1951.

The action was tried before *Hurley, J.*

*Joseph E. Levine,* for the plaintiff.

*E. Leonard Kane,* (*A. Kenneth Carey* with him,) for the defendant.

COUNIHAN, J.   This is an action upon an alleged oral contract for breach of which the plaintiff seeks to recover. At the close of the evidence at a trial before a judge and jury, the judge on motion ordered the jury to return a verdict for the defendant.   The action comes here upon the exception of the plaintiff to this order.   There was no error.

The evidence in its aspects most favorable to the plaintiff is as follows:   The defendant operated a farm on his property, consisting of about twenty acres, on Route 128 in Danvers.   Sometime in October, 1950, the plaintiff, who was a contractor, talked with the defendant about purchasing gravel off this land.   He offered the defendant ten cents a cubic yard for about two hundred thousand cubic

yards. The defendant said he would think it over. Later, on November 1, 1950, he had further talk with the defendant. As a result of this talk the plaintiff said he would strip the loam from the land and after taking out the gravel he would restore the loam. It was decided by them that before any removal of gravel could take place permission would have to be obtained from the board of appeals of Danvers. The defendant said, "I don't want to spend any money myself," and the plaintiff replied, "Well, Mr. Russell, you don't want to spend no money, I will spend the money and set up the thing for the board of appeals and apply for the permit, and I will pay all expenses and we will deduct it later when we start digging into the gravel bank." The defendant said, "That's all right. Go ahead. Get the ball going." The defendant made the application and the plaintiff procured photographs, plans, and engineering services for use before the board at a cost to him of $135. On December 12, 1950, they both attended a hearing before the board of appeals on the application for the permit. After the hearing disposition of the matter was continued on the understanding that the board would view the land the following Saturday. After this view at which by agreement the plaintiff was not present, the board by letter dated December 21, 1950, notified the defendant to produce a survey plan showing certain contours and elevations of the land. The defendant never complied with this request and there is no evidence that he ever brought this letter to the attention of the plaintiff. The plaintiff had another talk with the defendant in April, 1951, when the defendant told him that he had changed his mind about the deal with him because he was advised that he could get more money for the gravel.

There was no evidence that the plaintiff made any inquiry about action on the application for the permit after December 12, 1950, the date of the hearing, or that he did anything more about getting the permit. There was evidence that a permit was required from the board of appeals before gravel could be removed from this land. By town

by-law the issuance of such a permit was in the discretion of the board and it could impose conditions designed to safeguard the district and the town against injury to value in the district or because of methods of handling material or of transporting such material through the town. Later, after hearing, upon proof of violation of any of its terms, the permit might be withdrawn by the board.

After the defendant presented his motion the judge said, "I am constrained to allow the motion for directed verdict. I do not believe that on the evidence from the plaintiff especially coupled with all evidence that has been introduced the plaintiff has made out a case." We are of opinion that the ruling of the judge was correct.

In the case at bar all the evidence as to the negotiations between the parties came from the plaintiff. The only other evidence came from the records of the board of appeals and the zoning by-law of the town of Danvers. In *Cronin* v. *National Shawmut Bank*, 306 Mass. 202, at page 210, we said, "A mere indication of a willingness to receive proposals is not an offer which can ripen into a contract upon the submission of a proposal. There is no obligation to accept the most favorable proposal received or to accept any proposal at all. Any or all may be rejected for any reason or without any reason."

Here there were negotiations between the parties resulting in a proposal by the plaintiff to purchase certain gravel from the defendant. Both parties plainly understood that a permit from the board of appeals to remove the gravel was required. It is fair to say that they knew that the issuance of such a permit was in the discretion of the board which could impose conditions upon its use that might be unusually onerous on either party. It was reasonable for the judge to rule in these circumstances that no contract had been entered into. "Expectations and negotiations fall far short of a binding agreement." *Brighton Packing Co.* v. *Butchers' Slaughtering & Melting Association*, 211 Mass. 398, 405. *Phoenix Spring Beverage Co.* v. *Harvard Brewing Co.* 312 Mass. 501, 506. "An agreement to reach an agreement

is a contradiction in terms and imposes no obligation on the parties thereto." *Rosenfield* v. *United States Trust Co.* 290 Mass. 210, 217.

The plaintiff argues that the failure to obtain a permit was the fault of the defendant in that he did not comply with the request of the board to furnish the survey plan. But the defendant never obligated himself to do anything about getting the permit. That was the obligation of the plaintiff. See *Connor* v. *Rockwood,* 320 Mass. 360, 362. If he was diligent he could easily have found out, by recourse to the records of the board of appeals, why the permit was not forthcoming and taken steps to obtain it. When the defendant withdrew in April, 1951, he was not prohibited from so doing by any valid contract and his refusal to continue negotiations entailed no legal responsibility on his part. *Rosenfield* v. *United States Trust Co.* 290 Mass. 210, 217–218.

We conclude therefore that the plaintiff assumed the business risk of putting this transaction through; that there was no evidence upon which findings essential to the making out of a case for the plaintiff could have been made; and that the ruling of the judge to that effect was right. *Cronin* v. *National Shawmut Bank,* 306 Mass. 202, 212. Because of what we have said we do not consider other contentions of the parties.

*Exceptions overruled.*