Doyle, P.J.
This is an action in contract in which the plaintiff-insured seeks compensation pursuant to a standard auto insurance policy issued by the defendant for the theft and fire loss of his motor vehicle.
Judgment was entered for the plaintiff in the sum of $10,500.00.
The essence of the defendant’s appeal is a charge of error in the trial court’s construction of the “stated amount” coverage provisions of the insurance policy at issue.
The reported evidence indicates that in 1982, the plaintiff purchased a 1968 Chevrolet Corvette for the sum of $4,450.00. The plaintiff initially purchased from Byam Bros. & Mahoney Insurance Agency, Inc. (“Byam”) a standard auto insurance policy issued by the defendant. This policy included comprehensive coverage for any loss due, inter alia, to theft or vandalism with “actual cash value (“ACV”) ” limits.
In June, 1984, the plaintiff received a letter from Byam which suggested that existing “book value” coverage on the Corvette could prove inadequate in the event of a total loss, and which recommended that the plaintiff increase the coverage to “stated amount” value. The plaintiff obtained an appraisal of the vehicle and purchased “stated amount” collision and comprehensive coverage in the amount of $10,500.00 for an additional annual premium of $443.00.[1] The “stated amount” coverage became effective on July 10, 1984 upon the defendant’s issuance of an amended “Coverage Selections Page.” The previous ACV limits on the collision and comprehensive coverage on such page were deleted, and an asterisk was inserted to direct the policyholder’s attention to the endorsement section of the page. The endorsement section was completed as follows:
" * STATED AMT. (1) — $10,500 MPY-0027-S”
The code letters and numbers "MPY-0027-S” refer to a separate, standard form "Stated Amount Coverage" endorsement sheet apparently utilized by the defendant to limit its liability. A blank copy of such standard form was introduced at trial. The form states:
The Coverage provided under Collision, Limited Collision and Comprehensive (Parts 7 and 9) applies to the auto shown below. If that auto is damaged or stolen three amounts must be determined.
*34 They are:
a. The actual cash value of the auto at the time of loss.
b. The amount necessary to repair or replace the auto.
c. The amount shown below.
We will pay only the lowest of these three amounts less the deductible shown below.
Auto. Amount Deductible
$ $
The trial justice found that no such document was ever prepared with reference to the plaintiffs stated value policy or ever became part of the plaintiffs policy. The Coverage Selections Page in fact expressly states that such Page “and any attached endorsements (emphasis supplied)” constitute the insured’s policy. No MPY-0027-S standard stated amount endorsement form was ever attached to the plaintiffs policy.
On October 6, 1984, the plaintiffs car was stolen and later found totally burned. Expert testimony adduced at trial estimated the actual cash value of the Corvette at the time of loss to be $4,000.00.
The trial court found, in relevant part, that:
“the defendant is bound by the amended contract of insurance negotiated bytheByam Bros.’agent and that... it is obligated to pay plaintiff the full amount of the stated value of the policy; that is, $10,500.00.”
The defendant now claims to be aggrieved by the trial court’s denial of the following requested rulings:
1. The evidence requires a finding that the ‘stated amount coverage’ endorsement of the plaintiffs insurance policy states that, in the event of a covered loss, the defendant would pay the lesser of either the stated amount, the actual cash value at the time of the loss, or the cost to repair or replace the auto.
2: The evidence requires a finding that if the plaintiffs vehicle sustained a loss covered under his insurance policy, if the vehicle had an actual cash value of less than the ‘stated amount,’ then the plaintiff is not entitled to recover the ‘stated amount. '
There was no error in the trial court’s denial of defendant’s requested rulings numbers 1 and 2. These requests were improperly premised on assumed facts neither found by the trial j ustice nor warranted by the reported evidence; namely, that the payment provisions of endorsement form MPY-0027-S were incorporated into the automobile insurance policy purchased by the plaintiff and that such endorsement afforded the defendant the option of compensating the plaintiff at a rate less than the stated amount value of the vehicle in question. Neither familiar canons of contract construction nor considerations of elementary fairness permit, much less require, the specious contentions advanced by the defendant in its refusal to honor its contractual commitment.
It is axiomatic that an insurer is strictly bound, and its obligations to indemnify are precisely dictated, by the express terms of the contract executed with the insured. Kosior v. The Continental Ins. Co., 299 Mass. 601, 603-604 (1938); Rosenfeld v. Boston Mut. Life Ins., 222 Mass. 284, 287 (1915). The extent of the compensation to be paid for a loss cognizable under the policy is obviously governed by the coverage section. Said section is to be strictly construed so as not to diminish the protection purchased by the insured. MacArthur v. Massachusetts Hospital Serv. Inc., 343 Mass. 670, 673 (1962). Interpreting the words used in the policy herein in accordance with *35 their usual and ordinary meaning, see, generally, Joseph E. Bennett Co. v. Fireman’s Fund, Ins. Co., 344 Mass. 99, 103 (1962); Rezendes v. Prudential Ins. Co., 285 Mass. 505, 511 (1934), it is evident that the plaintiff purchased automobile collision and comprehensive insurance with a stated amount coverage of $10,500.00. This construction not only comports with the language used, but is also preferable to the defendant’s proposed construction as it effectuates the uncontested intent and purpose of the parties to increase coverage beyond book or actual cash value. See, generally, King v. The Prudentual Ins. Co. of America, 359 Mass. 46, 50 (1971); Massachusetts Turnpike Auth. v. Perini Corp., 349 Mass. 448, 452 (1965); Marshall’s Inc. v. Federal Ins. Co., 11 Mass. App. Ct. 853, 855 (1981).
The defendant contends that the inclusion of the code numbers “MPY-0028S” in the endorsement section of the Coverage Selection Page clearly establishes the incorporation of the provisions of that^standard form into the plaintiffs policy. The endorsement section does state that it includes “ [¡Identification Numbers of Endorsements Forming a Part of this Policy.” It is undeniable that effect must be given to every provision of a contract and that a construction which reduces language to mere surplusage is to be avoided. Sherman v. The Employers’ Liab. Assur. Corp., Ltd., 343 Mass. 354, 357 (1961); Wrobel v. General Accident Fire & Life Assur. Corp., 288 Mass. 206, 209 (1934). Nevertheless, the endorsement in question cannot be deemed to have become part of this policy solely through an incorporation by numerical reference. Such an incorporation by reference would clearly conflict with the Coverage Selection Page proviso that “attached” endorsements form a part of the policy. Ambiguities, inconsistencies and indeed all doubts arising from an insurance policy must be construed against the insurer and in favor of the insured. See, e.g., Transamerica Ins. Co. v. Norfolk & Dedham Mut. Ins. Co., 361 Mass. 144, 147 (1972); Palmer v. Pawtucket Mut. Ins. Co., 352 Mass. 304, 306 (1967); Schroeder v. Federal Ins. Co., 343 Mass. 472, 475 (1962). Therefore, as the MPY-0027-S standard form was not attached or annexed to the plaintiffs policy, the endorsement’s payment of loss options did not become a component of the parties’ undertaking.
The obvious flaw in the defendant’s incorporation by reference argument is that the standard MPY-0027-S stated amount coverage endorsement was never executed by the parties herein. The defendant was unable to produce a completed endorsement page pertaining to the plaintiffs policy and bearing the policy number and the signatures of both parties. Section 33 of G. L. c.175 mandates that:
“[rjiders or endorsements attached to any . . . policy or contract of insurance need not be signed by any officer of the company if signed by a duly authorized agent or representaive of the company, provided, that the name of the company shall be printed, typed, written or stamped on each such rider and the number of the policy or contract to which it is to be attached is inserted therein.”
See, e.g. London Clothes, Ltd. v. Maryland Casualty Co., 318 Mass. 692, 701 (1945). Compare, Niagara Fire Ins. Co. v. Lowell Trucking Corp., 316 Mass. 652, 658 (1944). A contract is the embodiment of a mutual undertaking and understanding. The terms of the standard form endorsement at issue could not become part of the parties’ agreement in the absence of the plaintiffs awareness and consent thereto. See Rosenthal v. Monarch Life Ins. Co., 290 Mass. 254, 258 (1935). The unexpressed intent of the defendant to limit the plaintiffs automobile coverage pursuant to such endorsement, or the defend *36 ant’s simple belief or expectation as to the controlling effect of form MPY-0027S could not alone alter the terms of the parties’ agreement or control its operation. See, generally, Quirk v. Smith, 268 Mass. 536, 543 (1929); Vitale v. Russell, 332 Mass. 523, 525 (1955). The defendant could not effectively incorporate by mere reference a policy limitation which had never been agreed to, or executed by, both parties and which thus remains wholly irrelevant to a resolution of the parties’ controversy herein.
The physical attachment or annexation of a rider or endorsement to an insurance policy promotes greater clarity in the identification and understanding of the precise terms of the contract for both the insured and the court. See Schiller v. Metropolitan Life Ins. Co., 295 Mass. 169, 173 (1936). Such procedure also precludes any post facto endeavor to restrict unconscionably an insurer’s liability. Public policy in this Commonwealth proscribes insurance contracts and practices which are “misleading” or which result in coverages that are “unrealistically limited” or “so limited in scope as to be of no substantial economic value.” Cody v. Connecticut General Life Ins. Co., 387 Mass. 142, 148 (1982). To permit the defendant herein to charge the plaintiff two hundred (200%) percent of a premium for book or actual cash value coverage to obtain stated amount coverage, and then to restrict the plaintiffs entitlements to the original, actual cash value limits pursuant to an unexecuted standard form endorsement would unquestionably violate not only said public policy, but also the express terms of the parties’ agreement.
There being no error, the report is dismissed. As this appeal is without merit and frivolous, double costs are hereby imposed upon the defendant pursuant to Dist./Mun. Cts. R. Civ. P. Rule 64(i).

 Tin* trial.iustiee noted that ilu* annual premium foi the plaintiffs original hook valuó coverage was Tin* total Nearly cost lor the stated \alue policy was $974 (H)