GUY J. DIFILIPPO & another,[1] executors,[2]
*vs.* CARL F. DIFILIPPO.

No. 92-P-1774.

Middlesex. May 19, 1994. - October 24, 1994.

Present: DREBEN, JACOBS, & PORADA, JJ.

*Will,* Construction. *Executor and Administrator,* Real estate of decedent.
*Devise and Legacy,* Real property, Remainder interests.

Where executors failed in their duty to offer the right to purchase certain
    real estate to a son of the testatrix in accordance with the terms of the
    will, the remedy was to require the executors to offer the son the inter-
    est of the testatrix at its fair market value at the date of her death some
    thirteen years earlier, plus interest at the rate of six percent from the
    time the offer should have been made, i.e., three months after the exec-
    utors were appointed. [534-537]

CIVIL ACTION commenced in the Middlesex Division of the
Probate and Family Court Department on September 25,
1986.

The case was heard by *John S. Macdougall, Jr.,* J., and a
motion to amend findings and judgment, or in the alterna-
tive, for a new trial was heard by him.

*Margaret C. Mahoney* for the defendant.
*Geoffrey A. Curtis* for the plaintiffs.

DREBEN, J. On the date of her death, September 24, 1981,
Maria Carmela DiFilippo owned an interest in a two-family
house located at 905 Main Street, Winchester (the property).
Two of her nine children were appointed executors of her es-
tate. After a dispute arose between the executors and their
brother Carl F. DiFilippo (Carl) as to whether they could
sell the property to a person other than Carl, they filed a

[1]Mary S. Watkins.
[2]Of the estate of Maria Carmela DiFilippo.

complaint for instructions in the Probate Court. A judge of that court made findings of fact, and a judgment entered authorizing the executors to evict Carl if he did not voluntarily vacate the property within sixty days and to enter into a purchase and sale agreement at current fair market value with a prospective purchaser, subject to obtaining a license from the Probate Court. Other parts of the judgment will be set forth in the course of this opinion. Carl is appealing from the judgment claiming, among other things, that he is entitled to purchase the property at its fair market value on the date of Maria's death and, because he is a tenant in common of the property, the executors have no right to evict him.

The record contains a statement of the evidence approved in accordance with Mass.R.A.P. 8(c), 378 Mass. 933 (1979). In their briefs, relying on the portions of the statement that suited their respective positions, the parties have stated the facts as each would have them. Our discussion will adhere to the judge's findings except as to one for which there is no record support. See note 5, *infra*, and accompanying text.

1. *Carl's rights under Maria's will.* Originally, the property was purchased by Maria's husband, Alfonso DiFilippo, and his brother, Pasquale, as tenants in common. Pasquale died in 1961, leaving a life estate to his widow Annie, and as we determine in part 2 of this opinion, the remainder to Alfonso. Alfonso died in 1969, leaving the residue of his estate to Maria. Annie, Pasquale's widow, lived until November, 1985. Thus, at her death in 1981, Maria owned the property subject to Annie's life estate in one half of the property.

Article Fourth of Maria's will provided:

> "I direct my executors to offer to my son, Carl F. DiFilippo, the right to purchase the property which I own at 905 Main Street, Winchester, Massachusetts, at its fair market value at the time of my death, which right of purchase must be exercised by him within six months of my death. If my said son shall not have survived me or shall not so accept said offer and purchase said property, then I direct my executors to sell the

same and the proceeds therefrom shall become a part of the rest, residue, and remainder of my estate."

The residue of Maria's estate was left in equal shares to her nine children.

Maria's will was filed in court on March 9, 1982, and her executors were appointed on October 22, 1982.[3] They filed their inventory on March 26, 1984, listing the value of Maria's interest in the property at the time of her death at $62,378. Since the property was appraised in January, 1983, at $68,000, the inventory value appears to reflect a deduction for Annie's life estate in one half of the property.

Carl has lived in one half of the house since 1956, has made repairs to the property, and has a tool collection in the cellar. He has paid the executors $150 per month in rent for the first-floor apartment, an amount below the market rent.

The executors have not offered Carl the right to purchase the property, and "Carl has never made a formal offer to purchase the real estate."[4]

In May, 1986, when he returned from work, Carl found a "for sale" sign on the property. Only then did the executors send Carl a copy of the 1983 appraisal. They received an offer on May 9, 1986, to purchase the property for $260,000.

The judge also found that Carl "has never demonstrated a capacity to purchase the real estate." This finding has no support in the record.[5]

Although the judge did not make separate conclusions of law, the judgment, which entered the same day as his findings, contains the judge's reasoning. After reiterating the

---

[3]Carl had filed an objection to the will but did not appeal from the judgment admitting the will to probate and the appointment of executors.

[4]The only other "finding" made by the judge relating to any offer was as follows: "One of the executors testified she offered the real estate to Carl DiFilippo, in 1982 prior to [the] appointment [of executors] for $68,000. He replied that he could purchase a home in Worcester for $35,000."

[5]Guy DiFilippo, one of the executors, testified that Carl was an engineer and made at least $30,000 a year. Guy and Mary (the other executor) testified that Carl intended to build a house on a lot that he owned in Winchester. The executors' own testimony thus indicates that Carl has both income and a parcel of land.

finding that the executors "never offered Carl DiFilippo the right to purchase the [property] at the fair market value at the time of the death of Maria," and after stating that Maria did not own a fee simple, and that her interest was subject to Annie's life estate in an undivided half of the property, the judgment contained the following two paragraphs:

> "C. The Executors of the will of Maria C. DiFilippo did not have the capacity, under the terms of her will, to offer Carl DiFilippo an effective or viable right to purchase the [property] with a marketable title of record, because said decedent did not own the fee simple title to said real estate at the time of her death.

> "D. Carl F. DiFilippo has failed to exercise any right he had to purchase [the property] at the fair market value at the time of the death of Maria DiFilippo on September 24, 1981, under the specific terms of the will of Maria DiFilippo."

Paragraph C of the judgment is an incorrect statement of law. The executors had the "capacity" to offer the real estate to Carl subject to Annie's life estate, and, indeed, under the terms of Article Fourth of Maria's will were directed to do so.[6]

To the extent that paragraph D of the judgment states a conclusion of law, it is also incorrect. If the judge meant that the burden was on Carl to initiate the exercise of his right, rather than on the executors, that interpretation does not comport with Maria's will. She explicitly required her "executors *to offer*" to Carl the right to purchase the property, and only if Carl "shall not so accept *said offer* and purchase said property," were the executors directed to sell. While the executors were unable to offer the property until their appointment, if they had any question as to their inability to comply with the time requirements of the will they could

---

[6] Whether the property was readily marketable to third persons because of Annie's life estate is irrelevant. Moreover, as the inventory indicates, her life estate had an ascertainable value.

have sought instructions. The executors make no claim of laches and, as their actions have shown, they were in no hurry to sell. We reject the argument made by the executors that the will provision was an option which required Carl to take the initiative. They had a duty to offer the property to Carl within a reasonable time of their appointment.[7] We consider that any time within three months after their appointment (that is, any time before January 22, 1983) would have been a reasonable time for such offer.

Having determined that the executors failed in their duty to offer the property to Carl, the question arises as to the remedy. Because of the long delay (and perhaps because the executors shared the judge's incorrect view that they could not sell the property prior to Annie's death), Carl has not had to come up with the purchase price and the beneficiaries have not had the use of the funds. It appears equitable to require the executors to offer Carl the interest of Maria in the property at its fair market value at the date of Maria's death, plus interest at the rate of six percent from the time the offer to him should have been made.

2. *Extent of Maria's interest.* While under the view we take of the duties of the executors, it is unnecessary to determine whether Carl has an interest in the real estate as a tenant in common which prevents him from being evicted, in order to determine the price Carl has to pay and the extent of his ownership, Maria's interest must be determined.

Carl's claim as a tenant in common with his siblings in an undivided half interest in the property rests on his interpretation of the will of Pasquale DiFilippo. The judgment made no determination as to the ownership of the property.[8]

---

[7]There is no suggestion in the record that there were debts or claims which precluded such an offer. In any event the offer could have been conditional on there being no claims that would impair the executors' ability to convey the property.

[8]Contrary to the executors' contentions, it is difficult to read the ruling authorizing eviction of Carl as an implicit determination of the ownership of the property. The judgment specifically reserved the right to file conclusions of law and referred to paragraph E of the judgment. That paragraph required each party to "file an affidavit in the style or form of a certification of title to an institutional lending institution setting forth the owner-

We turn to Pasquale's will. The relevant portions are set forth in the margin.[9] Article Fourth applies only if Alfonso predeceased Pasquale. Despite Carl's contentions to the contrary, if Alfonso survived Pasquale, he was given a remainder in the half interest of the property owned by Pasquale which vested in Alfonso at the time of Pasquale's death. "Remainder gifts, in the absence of very clear, affirmative, contrary indication, [and there is none here] are treated as vesting at the death of the testator." *Old Colony Trust Co.* v. *Tufts*, 341 Mass. 280, 282-285 (1960). See *Kendall* v. *Clapp*, 163 Mass. 69, 69 (1895) ("words 'heirs and assigns' are the usual technical words . . . to signify a fee"). In addition to inheriting Alfonso's original interest, Maria inherited Alfonso's remainder subject to Annie's life estate.

The judgment is vacated and the matter is remanded to the Probate Court to fashion a judgment giving Carl the right to purchase, within a reasonable time,[10] the property for $62,378, plus interest at the rate of six percent, see G. L. c. 107, § 3, from January 22, 1983. The judgment is to provide that if Carl does not elect to purchase the property within the time set forth therein, or as extended by agree-

---

ship of [the property]" at the time of Maria's death and at the subsequent death of Maria's sister-in-law. It does not appear that the judge, at a later time, filed any conclusions or determined the ownership of the property. Although the judge should, of course, as required by Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974), have stated separately his conclusions of law and should have supplemented the judgment, since the relevant instruments are before us we need not remand for that purpose, and we proceed to determine Maria's interest.

[9]"THIRD: I hereby give and devise my one-half interest in the real estate located at #905 Main Street, Winchester, Massachusetts, and the income therefrom, to my wife, Annie DiFilippo for the rest of her natural life, and, from and after her decease to my brother, Alfonso DiFilippo, of #905 Main Street, Winchester, Massachusetts, and his heirs and assigns.

"FOURTH: Should my said brother pre-decease me, then, in that event, after the life-estate to my wife, as described in Paragraph "Third" has expired due to her decease, I then give devise and bequeath all my property to Maria Carmela DiFilippo of said Winchester, and her children, in equal shares."

Article Fifth was, in effect, a repetition of Article Fourth.

[10]For example, six months or such other time as the parties agree upon would be a reasonable time.

ment, the property is to be sold in accordance with Article Fourth.[11]

*So ordered.*

---

[11]The executors now have a fee simple interest in the property and, under the will, see *Lievi* v. *Sheridan*, 361 Mass. 621, 624-625 (1972), are authorized to convert the real estate into personal property for distribution to Maria's children.