van Gestel, Allan, J.
This matter is before the Court on the Defendants’ Motion for Summary Judgment, Paper flS.[1]

BACKGROUND

On July 13, 2004, after the second day of a full mediation session before Professor Eric D. Green, a recognized expert in dispute resolution, Targus Group International, Inc. (“Targus”) and the defendants Howard Sherman (“Sherman”), Sean Brosmith (“Brosmith”) and Scott Oshiy (“Oshiy”) (the “Defendants”) reached an Agreement in Principle “to settle all claims, causes of action and disputes between them arising out of or relating to the acquisition [from the Defendants] of Roundhouse” by Targus. Roundhouse, Inc. was a company formerly owned by the individual Defendants.
The Agreement in Principle, (hereafter, the “Agreement”), was prepared and initialed by Professor Green, executed by duly authorized representatives of the Defendants and Targus, and endorsed as “APPROVED AS TO FORM AND CONTENT” by counsel for the Defendants and counsel for Targus.
Because of its central feature in this case, the Court quotes, essentially in its entirety, the Agreement.
[The Defendants and Targus] agree in principle to settle all the claims, causes of action and disputes between them arising out of or relating to the acquisition of Roundhouse by [Targus] on August 31, 2000, on the following terms and conditions:
1. Sellers [the Defendants] retain 3,000,000 Company [Targus] shares; return the balance of 781,803 shares.
2. Sellers pay Company $2,500,000.00 as follows:
—$500,000 personal note from Sellers payable within 6 months of settlement and personally guaranteed by sellers;
—$2,000,000 upon a liquidity event for Company, not guaranteed, non-recourse.
3. Sellers’ stock in Company to be pledged and escrowed against the back end payment obligation; pledge to be clean for filing purposes.
4. Sellers not entitled to a Board seat.
5. Sellers remain passive shareholders, i.e. no communications to Company employees (other than personal communications unrelated to the Company), board or advisors. Sellers shall receive from the Company only audited financial statements so long as they remain shareholders.
6. Company will look into whether it has sold the CD Project and Glacier Gear lines of business. As to such, if it has sold the businesses not subject to the non-competes, it will terminate the non-competes as to those lines.
7. Execution and exchange of final settlement documents and mutual releases in a form satisfactoiy to counsel, including release of any claims by Sellers for severance or under the Roundhouse Option Plan. The releases shall indemnify, defend and hold harmless the Sellers from any claims, causes of action, cross-claims or demands arising out of or relating to the Company’s filing of any claims against other Roundhouse selling shareholders.
There followed a time within which counsel for Targus and for the Defendants exchanged drafts of proposed final settlement papers. In this process, the parties failed to reach agreement and this suit was filed by Targus on November 9, 2004.
The Defendants claim that the proffered settlement papers from Targus contained provisions different from and not included within the Agreement. Targus disagrees. To this Court, what occurred in the exchange of settlement-paper drafts following the execution of the Agreement was a confirmation of the aphorism that “the enemy of good is perfect.”
The complaint contains five separate counts, as follows: Count I, in breach of contract — the mediation agreement — by not participating in the mediation process in good faith; Count II, in breach of contract — the Agreement in Principle — by not executing the settlement papers proffered; Count III, in breach of the implied covenant of good faith and fair dealing in the mediation agreement; Count IV, in breach of the implied covenant of good faith and fair dealing in the *218 Agreement in Principle; and Count V, for violation of G.L.c. 93A, sec. 11.

DISCUSSION

Summary judgment is granted where there are no issues of genuine material fact, and the moving parly is entitled to judgment as a matter of law. Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 Mass. 275, 281 (1997); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party, here the Defendants, bears the burden of affirmatively demonstrating that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
To suggest that the parties involved in drafting and executing the Agreement in Principle are other than extremely sophisticated would be a blunder of major proportion by this Court. Both sides were sophisticated and knowledgeable about their businesses and the underlying transaction, and both sides were fully represented throughout the underlying transaction and throughout the mediation process.
The Court begins with an analysis of the Agreement in Principle. Is it a binding agreement, or was the Agreement in Principle merely an agreement to reach an agreement wherein the parties only reached a stage of “imperfect negotiation” prior to formalizing a contract? Had they progressed beyond that stage such that the document is a valid and enforceable undertaking? Did the parties elevate their status from a mere expression of intent into a binding obligation to settle all the claims, causes of action and disputes between them arising out of or relating to the acquisition of Roundhouse by Targus?
Although Targus now insists that the Agreement in Principle is a final and binding agreement of settlement, it certainly continued negotiating the final form thereafter. The Defendants consider this proof that the parties had only agreed to attempt to agree later.
The question for decision, then, is what did the Agreement in Principle bind the parties to do?
A simple paper making an offer to purchase a specified condominium for a particular price can, when accepted, blossom into an enforceable contract to buy the properly, see e.g., McCarthy v. Tobin, 429 Mass. 84 (1999). Here, however, something much more complicated was at stake.
A purported contract which is no more than an agreement to agree in the future on essential terms, or one which does not adequately specify essential terms, ordinarily will be unenforceable. See Geo. W. Wilcox, Inc. v. Shell E. Petroleum Prod. Inc., 283 Mass. 383, 390; Caggiano v. Marchegiano, 327 Mass. 574, 579; Jacoby v. Koufman, 344 Mass. 761, 762; St. Regis Paper Co. v. Hubbs & Hastings Paper Co., 235 N.Y. 30, 36; Sun Printing & Publishing Ass’n. v. Remington Paper & Power Co., Inc., 235 N.Y. 338, 345-47; Ansorge v. Kane, 244 N.Y. 395, 398. See also Williston, Contracts (3d ed.) §§37-42, 45-49; Corbin, Contracts, §§95-102.
Air Technology Corp. v. General Electric Co., 347 Mass. 613, 626 (1964). See also Bell v. B.F. Goodrich Co., 359 Mass. 763 (1971); Vitale v. Russell, 332 Mass. 523, 525-26 (1955).
Normally the fact that parties contemplate the execution of final written documents justifies a strong inference that the parties do not intend to be bound by earlier negotiations or agreements until the final terms are settled. Rosenfield v. United States Trust Co., 290 Mass. 210, 216 (1935). Wasserman v. Roach, 336 Mass. 564, 568 (1958) . . . With final terms still to be hammered out, the parties could not be bound. Geo. W. Wilcox, Inc. v. Shell Eastern Petroleum Prod., Inc., 283 Mass. 383, 387, 390 (1933); Rosenfield v. United States Trust Co., 290 Mass. at 217; Saxon Theatre Corp. v. Sage, 347 Mass. 662, 666 (1964); Blair v. Cifrino, 355 Mass. 706, 709-10 (1969).
Tull v. Mr. Donut Development Corp., 7 Mass.App.Ct. 626, 630 (1979).
It bears noting that the Agreement in Principle was not scribbled on a cocktail napkin. Rather, it was a result of an elaborate process of sophisticated mediation, with all the trappings of formal presentations by principals, accompanied and guided by counsel, and facilitated by one of Boston’s most respected mediators. This is a process that is strongly favored as a matter of judicial policy, and should not be facilely brushed aside. Indeed, to this Court, a full day of mediation, capped off by signing a document which memorialized the agreement of the parties, signifies that there has been a meeting of the minds. See, e.g., Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co., 720 So.2d 372, 373 (La.Ct.App. 1998).
Settlement negotiations and offers to compromise have long been protected in Massachusetts. See, e.g., Liacos Brodin Avery, Handbook of Massachusetts Evidence (7th Edition, and 2005 Cumulative Supplement), sec. 4.6. “This rule [of confidentiality] is founded in policy, that there may be no discouragement to amicable adjustment of disputes, by a fear, that if not completed, the party amicably disposed may be injured.” Strauss v. Skurnik, 227 Mass. 173, 175 (1917), quoting from Gerrish v. Sweetser, 4 Pick. 374, 377. Since mediation is a recognized method of amicable adjustment of disputes, the protection of confidentiality applied to settlement negotiations and offers to compromise ought to apply as well to the mediation. And it is not just confidentiality that should accorded deference; it is the purpose and concept behind the mediation process itself.
“No contract otherwise binding is to be treated as a nullity solely because it is a contract to execute still another document or instrument in the future.” Sands v. Arruda, 359 Mass. 591, 594 (1971). See also Nigro v. Conti, 319 Mass. 480, 482 (1946). “It is not required *219 that all terms of the agreement be precisely specified, and the presence of undefined or unspecified terms will not necessarily preclude the formation of a binding contract.” Situation Management Systems, Inc. v. Malouf, Inc., 430 Mass. 875, 878 (2000). To the contrary,
[notwithstanding the importance of protecting negotiating parties from an involuntary judicially imposed contract, it is equally important that courts enforce agreements that were intended as binding, despite a need for further documentation or further negotiations . It is, of course, the aim of contract law to gratify, not to defeat, expectations that arise out of intended contractual agreement, despite informality or need for further proceedings between the parties.
Lafeyette Place Assocs. v. B.R.A., 427 Mass. 509, 518 n.9 (1998).
“If... the parties have agreed upon all material terms, it may be inferred that the purpose of a final document which the parties agree to execute is to serve as a polished memorandum of an already binding contract.” Goren v. Royalty Investments, Inc., 25 Mass. App.Ct. 137, 140 (1987). Here, there is no attempt to avoid this result by including a plainly speaking invalidating clause." Id. at 142-43. Nowhere in the Agreement in Principle does it say, or even hint, that it is qualified or that the parties intend only to be bound by the execution of some more detailed agreement.
The Agreement in Principle contains all of the essential terms for an enforceable agreement, and Targus and the Defendants are bound by it. Consequently, summary judgment in favor of Targus[2] should be entered on Count II in breach of contract relating to the Agreement in Principle and on Count IV for breach of the implied covenant of good faith and fair dealing contained in the Agreement in Principle. Such a ruling, however, must only be for a breach of the Agreement in Principle as written, not as attempted in the later failed exchange of drafts by the parties.
The summary judgment record is otherwise sufficient to overcome the viability of the claims in Counts I, III and V of the complaint, and it will be granted in favor of the Defendants thereon.

ORDER

For the foregoing reasons, the Defendants’ Motion for Summary Judgment, Paper #15, is ALLOWED as to Counts I, III and V of the complaint, and otherwise it is DENIED. Further, pursuant to Mass.R.Civ.P. Rule 56(c), summary judgment as to liability only is ALLOWED in favor of Targus Group International, Inc. against the Defendants on Counts II and IV.

The Court regrets the time that it has taken to resolve these issues. Its constitutional retirement on December 3, 2005, and re-call as of January 3, 2006, were factors, along with an otherwise busy schedule.

“Summary judgment, when appropriate, may be rendered against the moving party.” Mass.R.Civ.P. Rule 56(c).