Hand, J.
Defendant George D. Bryant (“George”) has appealed the finding against him after a jury-waived trial of this summary process case brought by Eugene A. Bryant (“Eugene”), as executor of the Estate of Marie-Louise Bryant, and as trustee for the Marie-Louise Bryant Revocable Living Trust (“the Trust’)- On appeal, George argues primarily that Eugene’s actions, as executor and trustee, in evicting him from a property owned by their late mother, were improper because Eugene failed to comply with the terms of the Trust and of Marie-Louise Bryants will (“Will”). Relatedly, George argues that even if the eviction were in accord with the terms of the Trust and the Will, the eviction amounted to a breach of Eugene’s fiduciary duty to him. For the reasons set forth below, we disagree, and affirm the trial courts rulings.
Our review here is limited to issues of law properly raised in the trial court and preserved for appeal. Breault v. Chairman of the Bd. of Fire Comm’rs of Springfield, 401 Mass. 26, 32 (1987); Huikari v. Eastman, 362 Mass. 867 (1972); Chadwick v. Desroches, 333 Mass. 768, 769 (1955). In appealing the judgment in this case, George did not file Mass. R. Civ. R, Rule 52(c), requests for findings of fact and rulings of law, the ordinary method of raising and preserving questions of law in a district court jury-waived trial.[3] George did, however, file a motion for directed verdict at the close of the plaintiffs’ evidence. The trial court, properly treating George’s filing as a motion for involuntary dismissal pursuant to Mass. R. Civ. P., Rule 41(b)(2),[4] denied the motion.
The requirements of Rule 41(b)(2) parallel those for directed verdict motions under Mass. R. Civ. P., Rule 50(a), see Cambridge Chamber of Commercev. Central Sq. Ins. Agency, Inc., 1999 Mass. App. Div. 27, 29, citing J.W. SMITH & H.B. ZOBEL, RULES PRACTICE §41.10, at 60 (1977), and the rules for preservation of rights under each rule are the same. See, e.g., Narcisse v. Stop & Shop Supermarkets, 2002 Mass. App. Div. 59 (to preserve right to appeal denial of motion for involuntary dismissal made at close of plaintiff’s evidence, defendant must renew motion at close of *162 all evidence); O’Sullivan v. Shaw’s Supermarket, 1997 Mass. App. Div. 1 (denial of motion for involuntary dismissal presents no issue for appellate review if defendant elects to present its own evidence). Ordinarily, a party’s renewal of its motion for directed verdict, made at the close of all the evidence, is a requisite step to the party’s preservation of its rights. Narcisse, supra. Where, as here, however, a party’s motion is denied at the close of the plaintiff’s evidence, and the defendant then rests without presenting evidence of its own, the party’s failure to renew its motion does not result in a waiver of the party’s appellate rights. See Lennon v. Durcan-Cuddy Ins. Agency, Inc., 2008 Mass. App. Div. 147, 147-148, quoting King v. G & M Realty Corp., 373 Mass. 658, 659 n.3 (1977) (defendant not required to renew motion for directed verdict where its own evidence was “brief’ and “inconsequential”). In this case, George rested immediately after the denial of his motion, and without going forward with his own evidence; accordingly, his objections to the court’s denial of his motion for involuntary dismissal were preserved.
The standard of review of the denial of a Rule 41(b) (2) motion, or of a motion for a directed verdict, is whether “anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff.” Sonogram of New England, Inc. v. Metropolitan Prop. & Cas. Ins. Co., 2002 Mass. App. Div. 68, 70-71, quoting Raunela v. Hertz Corp., 361 Mass. 341, 343 (1972). We summarize the relevant evidence taken from the record in the light most favorable to the plaintiff. Medford Co-op. Bank v. Skerry, 2004 Mass. App. Div. 120.
George and Eugene are brothers, and are two sons of the late Marie-Louise Bryant (“Mrs. Bryant”). Historically, members of the Bryant family owned individual properties on Commercial Street in Provincetown. Among those properties, and at issue here, is a residential property at 471 Commercial Street (“471 Commercial Street” or “Property”).
On August 4, 2000, Mrs. Bryant executed her Will. On the same date, Mrs. Bryant executed the Trust. Mrs. Bryant was both the Trust’s donor and its sole trustee. The Trust was amended twice: first, on March 12, 2001, to name George as a cotrustee with Mrs. Bryant; and later, on July 15, 2003, to substitute Eugene for George, as cotrustee, and to make certain other changes, not relevant here, with respect to George’s rights under the Trust.
For some time before 2004, Mrs. Bryant owned and lived at the Property. During Mrs. Bryant’s residence at 471 Commercial Street, George and his wife owned and lived at 473 Commercial Street, and also owned 465 Commercial Street. In 2004, Mrs. Bryant suffered a stroke and moved out of the Property and into a nursing home. The stroke affected Mrs. Bryant’s ability to manage her affairs independently; accordingly, Eugene was given power of attorney for his mother.
Mrs. Bryant died in January, 2005. Eugene became sole trustee of the Trust, and was subsequently appointed executor of Mrs. Bryant’s estate, as well.[5] Later that year, George transferred ownership of 473 Commercial Street and 465 Commercial Street to other family members as part of an effort to satisfy certain outstanding debts he had to his former wife and to the town of Provincetown. With the consent *163 of Eugene, as executor and trustee, George then moved into 471 Commercial Street, where he still resides. George, who now lives with his son, his son’s girlfriend, and his son’s child, is a tenant at sufferance; none of the current occupants have ever paid rent for the use of the Property. During George’s occupancy of the Property, the Trust has paid all expenses for the house and lands, including the taxes, and all heat, gas, electric, and telephone charges.[6]
At the time of Mrs. Bryant’s death, the liquid assets of her estate totaled approximately $140,000.00; the balance of her estate consists of the Property, valued at all relevant times at approximately $1.7 million, and a one-third interest in Marie Bryant LLC.[7] The estate taxes, which currently amount to over $800,000.00 and which continue to accrue, have at all relevant times exceeded the amount of the estate’s liquid assets. In 2009, Eugene, as executor and trustee, made a written demand on George for rent payments; George did not respond to the letter. Obligated to pay the outstanding estate taxes, and aware that the liquid assets of the estate were insufficient to pay those taxes, Eugene, as executor and trustee, decided to sell the Property. When George failed to vacate the Property voluntarily, Eugene instituted this action to evict him.
George’s first argument is that the trustee and executor may not evict him from the Property without first complying with the terms of the Will and of the Trust. In support of this proposition, George relies on the decision in DiFilippo v. DiFilippo, 37 Mass. App. Ct. 533 (1994). While George has correctly cited the legal principle operative in DiFilippo, the facts of that case are clearly distinguishable from those here. In DiFilippo, the plaintiff lived on a piece of property owned by his mother, subject to a partial life estate held by the plaintiff’s aunt. Id at 534. The plaintiff’s mother died testate. Id Her will directed that the executor offer the plaintiff the right to purchase her interest in the property at fair market value within six months of her death. Id. The executors never offered the plaintiff the opportunity to purchase the property. Id at 535. Instead, approximately five years after the testator’s death, the executors marketed the properly to someone other than the plaintiff, and sought to evict the plaintiff. Id. The Appeals Court ruled that, in keeping with the explicit terms of the will, the plaintiff must be offered the right to purchase the property, and must refuse to buy it, before the property could be offered for sale to anyone else. Id. at 538-539.
To the extent that DiFilippo is instructive here, it supports Eugene’s position. The terms of both the Will and the Trust explicitly require the executor and trustee to give priority to the payment of estate taxes and expenses.[8] Once those taxes have *164 been paid, the Will provides in its Fourth Article that any “remaining estate, real, personal and mixed” then pours over into the Trust to be administered according to the terms of the Trust document.
Article 4 of the Trust, as amended, provides instructions for administration of “all of the income and principal of the Trust Property remaining after complying with the provisions of Article 3 hereof.” Relevant to this action, Article 4 reads as follows:
One share [of the income and principal of the Trust Fund, after payment of Mrs. Bryant’s funeral and burial expenses, debts, expenses of administration, and legacies] shall be continued in Trust for the benefit of the Donor’s son, GEORGE D. BRYANT. The Trustee is authorized and empowered to pay to the said GEORGE D. BRYANT or for his benefit from the income and principal of this share remaining from time to time such amounts, any part of all, as the Trustee in its sole discretion deems necessary for his health, maintenance, or support (emphasis added).
The terms of the Will and Trust explicitly require the executor and trustee to pay the estate’s taxes and expenses before making any further distributions. Even if those payments have been made — and here, those obligations remain unsatisfied — the Trust gives the trustee sole discretion in deciding whether and how any distributions are to be made to George from his share of the remaining Trust property and income. Eugene, as executor and trustee, has taken no action with respect to George that does not comply with the terms of the Will or the Trust, or both. DiFilippo simply does not apply to the facts of this case.
George’s argument that Eugene’s efforts to evict him from the Property amount to a breach of Eugene’s fiduciary duty is also unpersuasive. As noted, the estate owes approximately $800,000.00 in state and federal taxes; much of this liability is overdue, and is accruing interest and penalties; and the Trust’s liquid assets total approximately $140,000.00. Without liquidating some other asset of the estate, Eugene, as executor and trustee, has no ability to pay the required taxes. The Trust assets are limited to the 471 Commercial Street property in which George lives, valued in 2007 at approximately $1.7 million, and a one-third interest in Marie Bryant LLC. Further, until the taxes are paid, Eugene has no ability to comply with the terms of the Trust that authorize him to make discretionary payments for George’s benefit. The terms of the Will and of the Trust give Eugene, as executor and trustee, very broad powers. His duty to George requires Eugene to act within “the bounds of a reasonable judgment” and to give reasonable regard to “usual fiduciary principles,” Woodberry v. Bunker, 359 Mass. 239, 243 (1971); that duty does not require that Eugene follow George’s personal preferences in carrying out his estate- and trust-related obligations. Eugene’s election to liquidate the Property in order to pay the outstanding debts and tax liabilities of his mother’s estate is reasonable; on the record before us, it is the only viable means of furthering the purposes of the Trust. His determination that the Property’s highest value would be in an unoccupied, clean state, and his exercise of his authority to evict George in order to market the Property, are also reasonable and within his discretion as Trustee. Eugene’s action, as executor and trustee, in evicting George is unwelcome — both to George and to Eugene — but *165 is plainly reasonable, and does not violate any fiduciary duty Eugene owes to George.
Judgment affirmed.
So ordered.

 As George failed to submit timely requests for findings or rulings, the trial judge was not obligated to detail the factual and legal bases for his ruling, and did not do so. Following the practice approved in Stigum v. Skloff, 433 Mass. 1011 (2001), the judge did prepare an informal summary of the reasoning behind his decision. In doing so, the judge explicitly stated that the summary was not intended to be a detailed description of his findings or rulings.

 Rule 50(a) applies only to jury trials. A “motion for directed verdict” brought in the course of a jury-waived trial is properly treated as a Mass. R. Civ. R, Rule 41(h)(2) motion for involuntary dismissal, which may be properly construed and decided as a motion testing the legal sufficiency of the plaintiff’s evidence. Alternatively, the judge may act as factfinder and, making findings and rulings, may decide the case on its merits. See Devito v. Cellular Mobile Communications, Inc., 1993 Mass. App. Div. 48, 50, citing Ryan, Elliott & Co. v. Leggat, McCall & Werner, Inc., 8 Mass. App. Ct 686, 689 (1979).

 Eugene was appointed executor only after George declined the appointment.

 George and his son have, however, done significant maintenance work at the Property during the time that George has lived there.

 There is no evidence in the record as to the value of that interest.

 Under the First Article of the Will, the executor is directed to pay all “inheritance, estate, legacy, succession or transfer taxes ... assessed as a result of [Mrs. Bryant’s] death ... out of [her] residuary estate as an expense of administration.” The Trust, at Article 3, authorizes the Trustee to pay to the estate the funds deemed necessary by the Trustee in his sole discretion, for payment of the “expenses, debts, taxes and legacies” due under the terms of the Will.