Despotopulos, J.
The plaintiffs, Thomas R. Pease (“Pease”) and 1812 Paint and Body, Inc. (“1812”), brought this action against John A. Jernigan ("Jernigan”), Amherst Towing, Inc. (“Amherst Towing”), and Jernigan and his wife Marietta (“Marietta”), as trustees of the Jernigan Family Trust (‘Trust”) in August, 2010. The plaintiffs’ amended complaint alleged breach of contract, quantum meruit, fraud, and violation of G.L.c. 93A The defendants denied the existence of a contract and raised the defense of an illegal contract. After a jury-waived trial on November 1, 2011, the court issued a memorandum of decision on December 21, 2011, finding in favor of the plaintiffs against Jernigan and Amherst Towing on a reliance theory and for violation of G.L.c. 93A, and finding in favor of Jernigan and Amherst Towing on the plaintiffs’ claims for quantum meruit and fraud. Judgment entered on January 9, 2012.
The plaintiffs thereafter filed a motion to alter or amend judgment for the assessment of attorney’s fees under G.L.C. 93A, as well as a motion for the attachment of interest in real estate by trustee process. The defendants, for their part, filed a motion for new trial or to alter or amend the judgment, arguing that the trial judge’s use of a reliance theory was unfair surprise, any contract between the parties was illegal, and judgment should enter for Jernigan and Marietta in their capacities as trustees. After hearing, the court issued an amendment to its memorandum of decision. The court allowed the plaintiffs’ motion to alter or amend the judgment, and awarded attorney’s fees in the amount of $12,442.45. The court denied the defendants’ motion for new trial. As to the defendants’ motion to alter or amend judgment, the court allowed the motion, in part, by ordering judgment for Marietta, as trustee; the court denied the motion, in part, by ordering judgment against Jernigan, as *170 trustee, finding that during the course of his dealings with the plaintiffs, Jernigan was acting both in his capacity as owner of Amherst Towing and as trustee. Finally, the court allowed the plaintiffs’ motion for attachment of interest in real estate by trustee process. An amended judgment entered on February 8, 2012 in the total amount of $93,077.28. This appeal by the defendants followed.
1. Denial of motion for directed finding. The defendants appeal the denial of their “motion for directed finding” on the grounds that no contract existed between the parties, any contract created was illegal, and mere breach of contract does not give rise to a G.L.c. 93A violation. The standard of review of the denial of a Mass. R. Civ. R, Rule 41(b) (2), motion for involuntary dismissal is whether “anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff.” Sonogram of New England, Inc. v. Metropolitan Prop. & Cas. Ins. Co., 2002 Mass. App. Div. 68, 70-71, quoting Raunela v. Hertz Corp., 361 Mass. 341, 343 (1972). We summarize the relevant evidence taken from the record in the light most favorable to the plaintiffs. Estate of Marie Bryant v. Bryant, 2010 Mass. App. Div. 160,162.
Jernigan has owned Amherst Towing for over 40 years. Pease has owned 1812 for over 30 years. In 2009, Amherst Towing lost its towing contract with the University of Massachusetts at Amherst (“UMass”). This was a substantial financial loss for Amherst Towing. In October, 2009, Jernigan contacted Pease, seeking help. Initially, Jernigan was seeking negative information about the towing contractor who won the contract with UMass. Jernigan repeatedly called Pease, almost daily seeking his assistance. Jernigan would offer to rent or sell the towing business to Pease. Eventually, Pease agreed to help Jernigan. On March 22,2010, the parties signed an agreement that allowed 1812 and its employees to clean the Amherst Towing premises and repair its equipment. This agreement was in anticipation of Pease and 1812 leasing Amherst Towing in the fall of 2010. The parties further agreed that “[n]o money will exchange hands during this time, until fall when a formal lease will be drawn up and signed by both parties.” The parties also orally agreed that Pease would take over the towing business for a two-year period, with Pease paying a rental fee of $500.00 per week to Amherst Towing.
The property on which Amherst Towing was located was subject to a special permit from the town of Amherst. The special permit allowed Amherst Towing to conduct a towing and repair business from that location. The permit was renewable every five years subject to the approval of the site plan, and would expire “upon change of ownership.” The site plan required that certain conditions be met, including general cleaning, removing a gravel pile, and completing a chain-link fence. At the time of the March, 2010 agreement, these conditions had not been met. Proposed changes to the site plan and a building permit application were submitted in anticipation of Pease taking over the towing aspect of Amherst Towing.
Pease and 1812 began repairing some of the vehicles owned by Amherst Towing. An 1812 employee brought Amherst Towing vehicles to the 1812 shop in Northampton for repairs. Once repairs were completed, Pease would have the vehicles returned to Amherst Towing along with an invoice. Pease also allowed Amherst Towing to use one of the 1812 trucks. Amherst Towing damaged this truck, and it was fixed by 1812. The repairs were made with Jernigan’s knowledge and in accordance with the signed agreement. Jernigan did not pay for the repairs of these vehi *171 cles, also in accordance with the written agreement that no money would exchange hands at that time.
Discussions and work continued throughout the spring of 2010 at Amherst Towing. Pease and his family began cleaning the premises, picking up trash and scrap metal and cleaning garage bays and office space. Jernigan was paid the value of the scrap metal. Jernigan was often present while this work was being done. He would make suggestions or offer his help or that of his employees. Pease hired a landscaper to remove the gravel pile as required by the site plan. Pease also began to erect the fence as required by the plan. Jernigan told Pease to stop erecting the fence because it was not where he wanted it located.
Pease continued the cleanup work at Amherst Towing. Pease discussed with Jernigan Pease’s ideas about expanding the towing business to include rental vehicles and repossession of vehicles. Jernigan thought this was a good idea. Jernigan gave Pease permission to create a separate office and waiting area in one of the bays in the garage. The building inspector approved these changes to the site plan, but a building permit was never approved. Unaware that a permit had not been approved, Pease bought materials and hired a carpenter to create the office space. Jernigan helped Pease find another carpenter after the first one abandoned the job. An electrician also performed work at the site. Pease paid the carpenters and electricians for their work. Pease also purchased computers, workstations, a heater, and an air compressor for the site.
In June, 2010, the Amherst building commissioner determined that work was being done at the site despite the lack of a building permit. Zoning and permits could not be approved until a management plan and an agreement on parking were in place. The building commissioner attempted to bring the parties into compliance with the requirements. She spoke by telephone to Jernigan and Pease’s wife and met with the carpenters about what was required. On July 28, 2010, a stop-work order was issued to both Jernigan and Pease.
Work at the site had already ceased. On July 3, 2010, the landscaper Pease hired and paid was at Amherst Towing removing the gravel pile. At Jernigan’s request, the police arrived and ordered the landscaper to stop work.
The defendants first argue that the trial court erred in denying their motion for directed Jmdág on the ground that no contract existed between the parties. They argue that the March, 2010 document was “an agreement to reach an agreement” and, therefore, unenforceable. Vitale v. Russell, 332 Mass. 523, 525 (1955), quoting Rosenfield v. United States Trust Co., 290 Mass. 210, 217 (1935). We agree with the trial court, however, that the plaintiffs presented sufficient evidence to support a claim based on reliance. To prove such a claim, a plaintiff must establish that 1) a promisor makes a promise that he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee; 2) the promise does induce such action or forbearance; and 3) injustice can be avoided only by enforcement of the promise. See Loranger Constr. Corp. v. E.F. Hauserman Co., 376 Mass. 757, 760-761 (1978). See also Neuhoff v. Marvin Lumber & Cedar Co., 370 F.3d 197, 203 (1st Cir. 2004) (applying Massachusetts law). “[A]n action based on reliance is equivalent to a contract action.... ” Rhode Island Hosp. Trust Nat’l Bank v. Varadian, 419 Mass. 841, 850 (1995). In this case, the March, 2010 agreement shows that Jernigan promised to enter a lease with the plaintiffs of Amherst Towing, and *172 Pease stated in his testimony, to which the defendants did not object, that the lease was to be for a two-year term for $500.00 per week. The defendants could have reasonably expected the plaintiffs to rely on such a promise, given that it coincided with their permission to the plaintiffs to ready the premises and equipment in preparation for the lease. Finally, it is clear that the plaintiffs relied on the promise to their detriment, having expended time and effort and incurred expenses cleaning and preparing the premises and repairing the defendants’ vehicles. The evidence was sufficient to support a reliance theory, and the defendants have not demonstrated that the court’s findings are clearly erroneous.
The defendants next argue that even if a contract existed, it was against public policy and unenforceable. They point to evidence that Jernigan operated Amherst Towing subject to a special permit issued by the town, which stated that it would expire “upon change of ownership.” From this, the defendants appear to argue that the March, 2010 agreement between the parties effectuated a change of ownership, which caused the special permit to expire, and which made the agreement for the plaintiffs’ operation of a towing business at the premises void because it lacked town approval. The defendants analogize to Hastings Assocs., Inc. v. Local 369 Bldg. Fund, Inc., 42 Mass. App. Ct. 162 (1997), in which the Court held unenforceable an agreement for the lease of a function hall, where the lease was predicated on the illegal transfer of the lessor’s liquor license to the lessee in violation of G.L.c. 138, §§2, 23. In that case, the Court concluded that there had been a “de facto transfer” of the liquor license as part of the lease. Id. at 175. In this case, there is no such finding, or evidence to support a finding, of a de facto transfer of the special permit. Further, there is nothing in the record establishing that the parties’ agreement to enter a lease constituted a change of ownership necessitating a new special permit. The only evidence on this point is that of the town building commissioner, who stated that a “sale” of Amherst Towing would have required a new special permit. In any event, the defendants breached their promise to lease Amherst Towing before any change of ownership could have occurred.
The defendants finally argue that the evidence was insufficient to support a finding of a G.L.C. 93A, §11 violation. In determining whether particular conduct runs afoul of G.L.c. 93A, courts will consider “(1) whether the practice... is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] whether it causes substantial injury to consumers (or competitors or other businessmen).” PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975), quoting 29 Fed. Reg. 8325, 8355 (1964). The analysis is fact specific, and “the presence or absence of the requisite unfairness ‘is determined from all the circumstances.’” New Kappa City Constr., Inc. v. National Floor Direct Inc., 2011 Mass. App. Div. 249, 250, quoting Duclersaint v. Federal Nat’l Mtge. Ass’n, 427 Mass. 809, 814 (1998). While the defendants are correct that not every breach of contract constitutes a G.L.c. 93A violation, and that a good faith dispute on whether money is owed is not actionable under the G.L.c. 93A, Northeast Line Const. Corp. v. J.E. Guertin Co., 80 Mass. App. Ct. 646, 654 (2011), it has been held that “stringing along” that induces detrimental reliance can constitute a G.L.c. 93A violation. Lambert v. Fleet Nat'l Bank, 449 Mass. 119, 127 (2007), citing Greenstein v. Flatley, 19 Mass. App. Ct. 351, 356 (1985). Here, the plaintiffs relied on Jernigan’s promise to lease Amherst Towing, expending time *173 and incurring expenses to their detriment and with the knowledge and assistance of Jernigan, which transferred considerable value to the defendants in terms of repaired vehicles, cleaner properly, and a more organized business. Further, as found by the court, without warning the plaintiffs of any dissatisfaction with their efforts, Jernigan abruptly contacted the police to order Pease’s worker off the property, never made any attempt to explain this action, and when Pease finally reached Jernigan by telephone, Pease was met with a vulgar expletive and hangup. As this conduct could provide a basis for recovery under G.L.c. 93A, §11, involuntary dismissal was properly denied.
2. Denial of requests for rulings. The defendants’ claim of error in the court’s denial of their requests for rulings of law is without merit. The court’s preparation of its own rulings in its memorandum of decision made the requests inapplicable. See New England Sports Therapy, Inc. v. Metlife Auto & Home, 2013 Mass. App. Div. 67, 69; B. Thomas Heinzer Assocs., Inc. v. Xarras, 2010 Mass. App. Div. 218, 219.
3. Denial of motion for new trial or alter or amend judgment. The defendants argue that the trial court abused its discretion in denying their motion for a new trial on the ground of surprise. They argue that since a reliance theory was not included in the parties’ joint pretrial memorandum, the judge was precluded from addressing it. A review of the record, however, indicates that the issue was tried with the implied consent of the parties and that the defendants were on notice that the plaintiffs claimed they relied on the representations made by Jernigan. See Jensen v. Daniels, 57 Mass. App. Ct. 811, 815-816 (2003).
As to their motion to alter or amend, the defendants further claim error in the trial court finding Jernigan liable in his capacity as trustee, arguing that the Trust was not a party to the March, 2010 agreement. The agreement permits 1812 and its employees, in preparation for the leasing of Amherst Towing, to get the equipment at Amherst Towing “in running order” and to clean the premises at Old Sunderland Road. The agreement is signed by “John Tex’ Jernigan.” There was evidence that Jernigan was the owner, president, treasurer, and sole stockholder of Amherst Towing. Further, there was evidence that the premises at which Amherst Towing was located, 100 Sunderland Road, was held by the Trust; that Jernigan was a trustee; that he was authorized to act with regard to the property; and that he was “in charge of the property.” The trial court’s finding that Jernigan was acting as owner of Amherst Towing and as trustee of the Trust, and that there was never any differentiation made during the course of the parties’ dealings, is supported by the evidence. Nor have the defendants demonstrated that the finding is clearly erroneous.
Finally, as there was no error in the court’s denial of the defendants’ motion for involuntary dismissal on the ground of illegal contract, there was no abuse of discretion in the court’s denial of the defendants’ motion to alter or amend judgment on this ground.
4. Admission of exhibits. The defendants argue that the trial court erred in allowing admission of exhibits 11, 12,13, 24, 26, 27, and 28 because these items, mainly invoices, were hearsay and, as such, inadmissible. Counsel for the defendants objected at trial to the admission of all of these exhibits, except for exhibit 28. In the absence of an objection to the admission of exhibit 28, there was no error by the trial judge. Lydon v. Coulter, 85 Mass. App. Ct. 914, 915 n.4 (2014), citing Abraham v. City *174 of Woburn, 383 Mass. 724, 726 n.1 (1981). The other exhibits were hearsay and should not have been admitted over the defendants’ objection. The error was harmless, however. The hearsay evidence was cumulative of the testimony given at trial by Pease and his wife, who both testified to the amounts paid to contractors and to the amounts of purchases of equipment and materials used to improve the site. See Polsinetti v. National Amusements, Inc., 1997 Mass. App. Div. 150, 152, citing, inter alia, Fall River Sav. Bank v. Callahan, 18 Mass. App. Ct. 76, 84 (1984).
5. Postjudgment security. The defendants’ final argument that the court erred in allowing the plaintiffs’ post judgment motion for real estate attachment by trustee process is without merit. In an affidavit in opposition to the motion, Jernigan averred that, as of January 30,2012, he was not owed absolutely any goods, credits, or effects from the Jernigan Family Trust. On February 3,2012, the court allowed the motion. While the record indicates that the trustee summons was served on February 12, 2012, there is no indication that an answer was ever filed. See G.L.c. 246, §10.
Judgment affirmed. Within ten days of the date of this opinion, the defendants may file an opposition with this Division to the plaintiffs’ application for appellate attorney’s fees.